

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

**LARRY D. CHRISTMAS, JR.,**

**PLAINTIFF**

25-309-HD

**VS.**

**DAVID STEINER,**
**POSTMASTER GENERAL,**
**UNITED STATES POSTAL SERVICE,**
**AGENCY,**                                      **DEFENDANT**

## COMPLAINT
### (JURY TRIAL DEMANDED)

**COMES NOW,** Plaintiff, Larry D. Christmas, Jr., and files this his

Complaint against the Defendant, United States Postal Service (USPS) and for

grounds would show unto the court the following to wit:

### JURISDICTION AND VENUE

1.     This employment discrimination lawsuit is authorized and instituted and

filed upon the basis of discriminatory hiring and employment practices, racial

discrimination, reverse racial discrimination, wrongful termination, and retaliation.

Christmas brings this action for declaratory relief, compensatory damages, and

punitive damages pursuant to Title VII of the Civil Rights Act of 1964, as

1

amended, 42 U.S.C. §§2000 et seq., The Civil Rights Act of 1866, The Civil Rights

Act of 1991, 42 U.S.C. §§ 1981, 1981a, 1983,1988, and the common law of the

state of Alabama.

2.      The jurisdiction of this Court is invoked pursuant to Title VII, 42 U.S.C. §§

2000e-5, 28 U.S.C. § 1331, 28 U.S.C. § 13a3(a)(3) & (4), to redress the unlawful

deprivation of the plaintiffs rights that are secured, guaranteed, and protected by

federal law.  This Court also has jurisdiction and Christmas seeks declaratory relief

pursuant to 28 U.S.C. §§ 1331, 2201, and 2202.  Plaintiff also invokes the Court's

pendant jurisdiction over Plaintiff's state law claims arising under the common law

and statutes of the State of Alabama pursuant to 28 U.S.C. § 1367.

3.      Venue is proper pursuant to U.S.C. § 1391(b) since Christmas has been and is

currently an employee of USPS AL-MS District which lies within the jurisdiction

of the United States District Court for the Southern District of Alabama, Southern

Division.  All conditions precedent to jurisdiction under § 706 of Title VII, 42

U.S.C. § 2000e-5(D(3) have occurred in compliance.

## PARTIES

4.      Plaintiff, Larry D. Christmas, Jr., is an adult African-American, male citizen

who is, at the relevant time, employed in the State of AL, Southern District

of Alabama, Southern Division.

2

5.    Defendant, USPS, has continuously conducted business in the State of Alabama and has continuously maintained at least fifteen (15) employees. Defendant also has continuously been and is currently an employer who is engaged in an industry affecting commerce within the meaning of § 701(b), (g), and (h) of Title VII, 42 U.S.C. § 2000e(b), (g), and (h).

## STATEMENT OF FACTS

6.    Christmas was employed as a Rural Carrier Associated (RCA) in Ocean Springs, MS from May of 2017 to November of 2017 before transitioning to PSE Mail Processing Clerk at the Gulfport plant in Gulfport, MS. Christmas applied for job posting "10141998" in October of 2017. Christmas was offered employment on November 4, 2017. Christmas was employed as a "PSE MAIL PROC CLK" and began working on Saturday, November 25, 2017.

7.    At some point during employment at the plant, it was somehow misconstrued that Christmas had been hired as 'Christmas-help'. Christmas requested copies of his past four (4) PS-502 forms to further support that he was not hired as Christmas -help. Three (3) of such requested forms were generated during his transition from RCA to PSE, and a fourth was generated with a January 5, 2018, termination date. It appears that that code was altered approximately 21 days as Christmas's Form 50 was generated and processed on December 5, 2017.

Please note that the effective hire date was prior to the earlier processing date. Twenty-one (21) days later, on December 27, 2017, Christmas's labor distribution code on line 53 of PS Form-50 was changed from (13) thirteen to (14) fourteen. An effective termination date was pre-generated for January 5, 2018. Contrary to the latter mentioned document, Christmas remained employed until approximately January 9, 2018.

8.     It was then brought to Christmas's attention that he was 'Christmas-help' and that he was no longer a U.S. Postal Service Employee. Both Christmas (a black man) and Chondria Rush (a black woman) remained on the schedule and employed as Gerald Byrd and Jakob P. Jones (two white male employees) were terminated on January 5, 2018.

9.     Prior to the PS Form-50, Christmas had neither accepted employment as 'Christmas-help', nor had Christmas been provided or signed any document suggesting acceptance of such Christmas-help or seasonal employment. After the other two white male employees were notified of their effective January 5th termination date, morale was diminished after the two white employees refused to interact with and communicate with other black PSE employees and began to 'cling' to Bruce Davis and another employee who goes by 'Bubba'.

10.    It was then communicated that race discrimination was alleged by the white employees as Rush and Christmas (both African-American) were retained for employment past January 5, 2018. As a result of said complaining by the white employees, both Christmas and Rush were terminated on approximately January 9, 2018.

11.    It was blatantly obvious that race had been inferred. There was definitely NOT a shortage of work, and there was a demand for PSE's as the Gulfport Plant had recently loss three (3) PSE's and (1) one regular clerk. As of consequence, the reasons provided for termination -*lack of work*- fails. In lieu of previously retaining Christmas and Rush, Therese Lesniewski (OSS) then decided to bring back Jakob Jones for employment on February 20, 2018, which is forty-six (46) days following Jones' January 5th separation date; however, both tour-3 PSE clerks (Christmas and Rush along with another black PSE employee from Tour-1) were not separated until January 9, 2018. After Jones's reemployment, Jakob Jones had informed several coworkers that Therese Lesniewski had emailed him to report to work. Christmas requested for Ms. Lesniewski to produce the copy of such USPS email to no avail.

12.    Christmas contacted Gulfport plant on February 22, 2018, at approximately 12:57 am to check the status of his paycheck. Christmas had previously been

advised by a union rep two (2) pay-periods prior to expect his pay within the next two pay cycles. Upon calling, Christmas was advised to call back after 7 am to see if his check had come in. He spoke with Mr. Bryan at approximately 7:38am, and Mr. Bryan stated that no check was available and that he would check further. Christmas then provided him his contact information. Mr. Bryan returned Christmas's call at 7:57 am and stated that Therese Lesniewski had informed him that she was working on Christmas's case, but had not made any headway as she was battling with HR personnel in Jackson, MS.

13.     Christmas reached out to management and union representatives on several occasions indicating that he had not been compensated for his labor. This constitutes free labor or slavery, and Christmas had Not and have not consented to either. Furthermore, eight (8) weeks is an unacceptable time frame for any employer to withhold wages of an employee for hours worked. It also appeared as if Christmas was not on the pay-roll. Ms. Lesniewski responded in an email transmitted on February 23rd as follows:

I am still fighting with Jackson to get you put back on the rolls to get you paid. You have to be on the rolls to be paid through pay adjustments or grievance settlements. It will not let me pay you until you are on the rolls. I contacted the Manager of Human Resources in Jackson today to see if she could help me. I have not gotten a response yet. We had clerk jobs come down out of eReassign yesterday. We are trying to determine how many PSEs will be converted. The person I work with in Jackson is on a telecom until 10:30. She will call me so we can see if we can determine how many to convert which will determine how many I can hire.

14.    Christmas then responded via email on February 27, 2018, at approximately

10:42 am as follows:

What is the name and contact information of your contact person in Jackson, MS
that you have been working with in regards to getting me paid? Will you be able to
provide the communication history depicting all efforts and attempts to pay me for
all days and hours work after January 5, 2018.
On Tuesday, January 16, 2018, 1 spoke Ms. Therese of HR (Gulfport Plant) in
regards to my employment status. Prior to being employed at the Gulfport
processing plant, I was employed as RCA in Ocean Springs, MS. Before making
such transition, (acting Postmaster) Shane Hodges validated with several HR
personnel from both the Gulfport plant and Jackson area offices that this position
was in-fact a PSE clerk position and not Christmas help. I attached via email a
copy of the PSE job in which I was hired for along with the PS-Form 50. 1 have
not been paid for the hours worked past January 5, 2018.

You specifically stated that you were "still fighting with Jackson" to get me paid.
Please inform me as to what was specifically discussed. What is Jackson's position
in this fight? What has Jackson suggested to resolve said conflict? When did these
alleged communications occur?

Additionally, what is the name and contact information of the Manager of Human
Resources in Jackson, MS? What was the outcome or determination of these
communications?

I also recall that you mentioned clerk jobs were in eReassign? Could you elaborate
on what method or how soon the former PSE's may be recalled? Has Jackson been
contacted or approved rehire of or adding to rolls of any former PSE employee past
the January 5th separation date? Has any of the former employees been contacted
for reemployment? Would either of the PSE employees whom were selected to
work past the 5th day January, 2018, be considered or reemployed prior to those
whom were separated on January 5, 2018. Would it be possible for an employee
whom was separated on January 5th to remain on the rolls as opposed to an
employee whom was retained to work longer being removed from the rolls?

Will I, Larry D. Christmas, Jr., along with other similarly situated employees, be entitled to wages for all hours of which I was schedule for, but was unable to work due to being told that I was no longer an employee dispute being selected to work past the January 5th date? How long does it take to actual get a new and/or former employee "on the rolls"? Has any other 'non-protected' similarly situated employee had these complications of allocating funds post termination? Has any other non-protected employee been reassigned and/or left on the rolls after being separated on January 5, 2018.

[Note: My labor distribution code on block 53 was changed from thirteen (13) to fourteen (14) on my last two (2) PS Form 50s.]

Considering that it has been nearing eight (8) weeks, would it be possible to get funds paid from miscellaneous account? Again, an employee shall not be subjected to 8-weeks then possibly have to wait several more weeks prior to receiving wages.

15.    Several bogus explanations had been circulated throughout the plant to justify the hiring back of Jakob Jones on Tuesday, February 20, 2018. First, management attempted to claim that Jakob was eligible for veteran preference. On candidates whom attached DD-214 to application prior to interview are eligible for veteran preference. See, Exhibit 7. Second, they were claiming that Jones was hired on a date prior to the other PSE clerks. Then it was later proffered that Jones' paperwork indicated that he was NOT Christmas-help. Now, it is currently stated that Jakob Jones was never terminated; therefore, it was just easier to convert Jones & bring him back for further employment.

16.    All of the aforementioned explanations both fail and are pretextual for reasons which includes, but are not limited to, as follows:

(1) Jakob Jones is neither a veteran, nor was eligible for veteran preferences; (2) Jones was hired at the same time as everyone else in the group of 4 PSE clerks brought in on tour-3; (3) Christmas-help is not specified on Form 50, how can his form indicate that he is NOT Christmas-help; (4) If Jones was terminated on January 5th and wasn't selected to work past Jan. 4th, how could he have not been terminated and later reemployed prior to the two(2) black employees whom were employed, on schedule, and working past January 5, 2018? Jones clearly was not placed on the schedule following Jan 5th; however, both Larry Christmas and Chondria Rush were.

17.    To date, Therese has failed to produce an explanation for her employment actions. Christmas) had made several requests, in writing, for production of employment records to ensure that hiring was based on collective bargaining agreement(s) or seniority. It has not been explained how Jakob Jones was brought back/retained on Feb. 20 prior to both Christmas and Rush. Christmas holds that he was employed as a PSE and not as Christmas Help or as a Holiday Clerk assistant. Christmas asserts that his termination was based upon discrimination and now claims that he was not reinstated employment in retaliation for his EEO involvement. Christmas faced continuous adverse employment actions as a result of his involvement in legally protected (Title VII) activity.

9

## ADMINISTRATIVE PROCEDURE

18.    Plaintiff exhausted his administrative remedies as evidenced by "Exhibit(s):

A1, A2, & A3" which is attached and incorporated herein.  Plaintiff filed an initial

complaint of discrimination upon the basis of discriminatory hiring and

employment practices, racial discrimination, reverse racial discrimination,

wrongful termination, and retaliation satisfying the requirements of 42 U.S.C. §

2000 (e) with the Equal Employment Opportunity Commission with Birmingham

District Office at 1130 22nd Street South, Birmingham, Alabama 35205.  Such

complaint was filed within (45) days after the last unlawful hiring employment

practice occurred and a charge of discrimination was signed.  The Equal

Employment Opportunity Commission (Office of Federal Operations) mailed a

Decision which includes a notice of rights to the plaintiff on or about April 23,

2025.  A true and correct copy of the Decision is attached hereto as "Exhibit B".  A

true and correct copy of the charge of discrimination is also attached hereto as

"Exhibit(s): A1, A2, & A3".

19.    Complaint was filed within (90) days of the Plaintiffs receipt of

the Decision.  Plaintiff complied with all statutory and administrative

prerequisites to filing suit.

## CAUSES OF ACTION

## COUNT I- DISCRIMINATORY HIRING AND EMPLOYMENT

## PRACTICES

20.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.  The actions and the inactions of the defendant as mentioned above, constituted an unlawful employment practice of discriminatory hiring and employment practices when USPS brought back Jones on February 20, 2018, and prior to rehiring either Christmas or Rush.  USPS then tried to provide a pretextual explanation stating that Jones was given military consideration or points. Christmas holds that Ms. Rush was the only employee who had seniority and veteran preference as legitimate military credit was added to her score.  Both Christmas and Rush had been prejudiced.

21.    Ms. Lesniewski claimed that she was going to rehire Christmas; however, when positions became available, Kenneth Townsend was rehired even though Christmas had seniority over Townsend.  It was alleged that Kenneth Townsend had seniority over Christmas, and this is both untrue and pretextual as Townsend did not hire in until after Christmas's hire date.  Also, Townsend was hired in as a Mail Handler Assistant (MHA) as opposed to Christmas being hired as Mail Clerk.

## COUNT II- RACE DISCRIMINATION (§ 2000e-2)

22.     Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. The actions and the inactions of the defendant as mentioned above, constituted an unlawful employment practice of race discrimination prohibited by Title VII of the Civil Rights Act of 1964, as amended, and 42 U.S.C. § 2000e-2 when Christmas was discriminated against due to his race and color because two white employees, Gerald Byrd and Jakob P. Jones made unwarranted complaints of racial discrimination after being terminated on January 5, 2018. Christmas along with another African American, Chondria Rush, were retained for employment past January 5, 2018, because they had higher test scores than the white employees. Christmas and Rush were later terminated after the unwarranted complaints of the white employees, Byrd and Jones. After Christmas and Rush were retained for employment and then later terminated after the unwarranted complaints of the two white males that were terminated, their scores, seniority, and qualifications were ignored when they were terminated. Christmas's and Rush's scores, seniority, and qualifications are why they were initially retained for employment over Byrd and Jones in the first place.

23.     Christmas was also discriminated against because of his race and color on dates other than March 19, 2018, because he was told he could begin work in the

middle of a pay period when another employee, Jones, who is white was rehired and allowed to begin work in the middle of a pay period.  The Postal Union Collective Bargaining Agreement, the EEOC and the USDOL are all policies that were violated.

## COUNT III- WRONGFUL TERMINATION

24.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full.  The actions and the inactions of the defendant as mentioned above, constituted an unlawful employment practice of wrongful termination.  Christmas was told he was terminated because none of the Christmas help employees would be kept on the payroll; however, Christmas's Form 50 Notice of Personnel Action states his termination is due to a lack of work.  Christmas does not agree with this reason because during his employment, before his termination, it was consistently stated by management that they were shorthanded and in need of more employees.  There was a demand for PSE's at the Gulfport Plant, and the plant had recently lost three PSE's and one regular clerk.  Furthermore, Christmas's position was a permanent position.  Christmas never accepted employment or signed any document suggesting acceptance of such "Christmas help" or seasonal employment.

## COUNT IV- REVERSE RACIAL DISCRIMINATION

25.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. The actions and the inactions of the defendant as mentioned above, constituted an unlawful employment practice of reverse racial discrimination and retaliation. Management were notified of alleged racial discrimination by the two (2) white employees, Byrd and Jones. Consequently, two (2) qualified black employees with more seniority and higher test scores were later terminated. Complaints were made by the disgruntled white PSE's to Bruce Davis & 'Bubba' and then forwarded to Ms. Lesniewski (OSS).

## COUNT V- RETALIATION

26.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. The actions and the inactions of the defendant as mentioned above, constituted an unlawful employment practice of retaliation. Christmas was told he would be re-hired as a PSE by March 31, 2018, by Therese Lesniewski, Plant OSS. Christmas interviewed for a MHA (Mail Handler Associate) job with Therese Lesniewski on Monday, March 19, 2018. Christmas was informed that another employee had taken the MHA job and that Ms. Lesniewski would be bringing him and another employee back on March 31, 2018. Christmas attests that this was stated both verbally and by email. Christmas believes he was not rehired as he was

told because Ms. Lesniewski had denied employment out of retaliation to him filing an EEO complaint in February of 2018. Christmas believes that Ms. Lesniewski elected not to rehire and had also informed Christmas that she had received notice that he had been presented an offer of employment from the Alabama District. Christmas also attests that Ms. Lesniewski advised him to decline the offer of employment from the Alabama District since she would be rehiring him as a PSE on March 31, 2018. Christmas notified the employer that he would not refuse any offers of employment.

27.    Christmas was later not rehired at the Plant on March 31 despite being guaranteed employment. On approximately March 19th days later, the said offer was rescinded after personnel (Ms. Lesniewski) from Mississippi District in retaliation contacted Alabama District indicating that Christmas was no longer interested in a job offer as a City Carrier Associate (CCA) in Mobile, AL. Christmas was contacted by the Alabama District by email associated with a prior interview and an application. Christmas would have accepted any/all employment. Christmas did not want to decline an offer prior to being actually employed. Christmas asserts that the Mississippi District acted in retaliation.

28.    On March 22, 2018, Christmas received a call and was left a voicemail from Adrian Brown of the Alabama District stating she was informed by the Mississippi

District that he wanted to decline a job offer for a CCA position in Mobile, Alabama. Christmas strongly reemphasizes that he never informed the Mississippi District that he no longer was interested in any job offer. Christmas was also notified in the March 19, 2018, interview by Ms. Lesniewski that she had received notice that Christmas had been offered a CCA position in the Alabama District.

29.    The collective bargaining agreement was breached as well as Title VII, EEOC laws because Christmas was definitely interested in any employment offer at the time because he was unemployed. Christmas was continuously deprived employment as a result of retaliation and the Mississippi District harmed his application by wrongfully and falsely declining employment. Christmas was discriminated against based on his race and color as there was no reason for the Mississippi District to contact the Alabama District. The Alabama District offered employment and the Mississippi District attempted to sabotage employment as a result of an EEO being filed. Christmas attests that the Mississippi District had no intentions of hiring him. The system would prompt him to accept/decline whichever offer at the time of hire and this was not the case. Christmas attests that the discrimination was retaliatory and the consequence of a previous EEO claim of race and color. Christmas was employed in a different capacity at another location

or facility on April 14, 2018. Christmas, a qualified applicant, had been denied and deprived employment and EEO for other vacancies out of retaliation.

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

30.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. The actions and inactions of the Defendant, as mentioned above, constituted an intentional infliction of emotional distress on the Plaintiff. As a proximate consequence of the actions of Defendant, the Plaintiff was harmed.

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

31.    Plaintiff realleges all prior paragraphs of the Complaint as if set out here in full. The actions and inactions of the Defendant, as mentioned above, constituted a negligent infliction of emotional distress on the Plaintiff. Plaintiff contends the Defendant knew or should have known that it's actions were outrageous and beyond all decency and would cause harm to the Plaintiff. As a proximate consequence of the actions of Defendant, the Plaintiff was harmed.

## CAUSATION, INJURY, DAMAGES

32.    As a direct, sole, and proximate result of the actions and inactions of the Defendant and as consequence of the foregoing misconduct, Plaintiff sustained pain and suffering, great mental distress, depression, physical injury, humiliation,

and anguish.  As a direct, sole, and proximate result of the actions and inactions of the Defendant, as mentioned above, the plaintiff has been injured and damaged and seeks recovery of compensatory damages in the amount of $375,000.00 and punitive damages in the amount of $1,375,000.00.

## RELIEF

33.    Christmas was hired as a full time PSE employee.  Because Christmas was not hired in as "Christmas help", Christmas is requesting back pay at the rate of $16.98 for all hours equivalent to the lesser of the two PSE employees' hours worked since January 9, 2018, (the date of Christmas's wrongful termination). Racial employment discrimination: After being notified that Christmas was retained for employment as a PSE Mail Processing Clerk, Christmas was terminated after unwarranted complaints of racial discrimination were alleged by a number of white employees who had been notified that they were going to be let go.  As a result, Christmas was terminated on January 9, 2018.  Christmas was informed that he was being terminated because none of the "Christmas-help' employees would be kept on pay roll; however, Christmas's Form 50 states that termination is based on a lack of work.  Christmas is requesting the rate of pay equivalent to Jones's pay for all hours worked since his rehire (times two). Christmas is requesting lost wages (back pay, front pay), lost benefits, pain &

suffering, punitive damages, and all EEO relief applicable. Also, all applicable personnel shall endure extensive training to prevent discriminatory practices and occurrences in the future.

34.    Plaintiff respectfully requests that this Court enter a declaratory judgment declaring that the actions and inactions of the Defendant, as mentioned above, constitute unlawful race discrimination, intentional infliction of emotional distress, and negligent infliction of emotional distress against Larry D. Christmas, Jr., and enjoining Defendant from in the future engaging in such discriminatory practices.

35.    Plaintiff respectfully requests that this Court Order Defendant to institute and carry out policies and provide mandatory training regarding Title VII and its prohibition against retaliation to all management and non-management officials in its facilities

36.    Plaintiff also respectfully requests that the Defendant provide appropriate pay in amounts to be determined at trial, and any other affirmative relief necessary to eradicate the effects of its unlawful retaliation. Plaintiff respectfully requests that this Court Order Defendant to make plaintiff whole by providing compensation for pecuniary losses in amounts to be determined at trial. Plaintiff respectfully requests that this Court Order Defendant to make Plaintiff whole by providing compensatory damages of $375,000.00 and punitive damages in the

amount of $1,750,000.00.  This includes and is not limited to compensation for

nonpecuniary losses, including emotional pain and distress, suffering,

inconvenience, negligent infliction of emotional distress against Larry D.

Christmas, Jr., mental anguish in amounts to be proven at trial, and enjoin

Defendant from engaging in any such discriminatory practices in the future.

37.    Plaintiff respectfully requests that this Court Order Defendant to pay

punitive damages for its malicious and/or reckless conduct, in an amount to be

determined at trial.  Plaintiff respectfully requests that this Court Grant such further

relief as the Court deems necessary, just, proper, and entitled under the law.


**RESPECTFULLY SUBMITTED** this, the 28th day of July, 2025.


Larry D. Christmas, Jr.
3512 Arlington St.
Pascagoula, MS 39581
(504) 261-6590
larrychristmas@gmail.com